**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

| | |
|---|---|
| YAMILEE BENNETT, MARIA BUSH, AMINATA MBAYE, ALON ROBERTS, AND AFRICA WILLIAMS, On behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>BT'S ON THE RIVER, LLC dba BOOBY TRAP ON THE RIVER, a Florida Limited Liability Company and MIKE BRUSO, an individual and MIKE ARZA, an individual<br><br>Defendants. | CIVIL ACTION FILE NO:<br>FLSA Collective Action |

**COMPLAINT FOR DAMAGES AND JURY DEMAND**

Plaintiffs YAMILEE BENNETT, MARIA BUSH, AMINATA MBAYE, ALON ROBERTS, AND AFRICA WILLIAMS, on behalf of themselves and others similarly situated (collectively "Plaintiffs"), by and through the undersigned counsel hereby files this Complaint against BT'S ON THE RIVER, LLC dba BOOBY TRAP ON THE RIVER ("Booby Trap"), a Florida Limited Liability Company, MIKE BRUSO, MIKE ARZA, and alleges as follows:

**INTRODUCTION**

1. This is an action brought pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). Defendants violated the minimum wage and record keeping requirements of the FLSA. Plaintiffs seek unpaid wages, including "kick-backs", liquidated damages and reasonable attorneys' fees and costs.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to the FLSA and 28 U.S.C. § 1331.

3. Venue is proper under 28 U.S.C. § 1391 because a substantial part of events or omissions giving rise to this action occurred within the jurisdiction of this Court.

## PARTIES

4. Plaintiff Yamilee Bennett ("Bennett") resides in this District and was a former employee of Defendants, having been employed at the Booby Trap from 2019 to 2021.

5. Plaintiff Maria Bush ("Bush") resides in this District and is a current employee of Defendants, having been employed at the Booby Trap from August 2019, to current.

6. Plaintiff Aminata Mbaye ("Mbaye") resides in this District and is a current employee of Defendants, having been employed from 2020 to current.

7. Plaintiff Alon Roberts ("Roberts") resides in this District and is a former employee of Defendants, having been employed by the Defendants from approximately April 2019 to March 2020.

8. Africa Williams ("Williams") resides in this District and is a former employee of Defendants, having been employed by the Defendants from approximately March 2019 to Winter 2020.

9. Bennett, Bush, Deleston, Roberts, Simmons and Williams are/were employees within the meaning of the FLSA.

10. The FLSA Class Members are all current and former exotic dancers who worked at Booby Trap on the River located at 3615 NW S River Drive, Miami, Florida 33142 at any time starting three (3) years before this Complaint was filed, up to the present.

11. Defendant BT'S ON THE RIVER, LLC dba BOOBY TRAP ON THE RIVER ("Booby Trap") is Florida Limited Liability Company with its principal place of business located at 3615 NW S River Drive, Miami, Florida 33142. At all times mentioned herein, Booby Trap is/was an "employer" or "joint employer" as defined by the FLSA, 29 U.S.C. § 203(d) and (g). Booby Trap may be served via its agent for service of process, Greg Berger, 5325 NW 77 AVE MIAMI, FL 33166.

- 4 -

12. Defendant MIKE BRUSO, ("Bruso") owns and operates the Booby Trap. Defendant Bruso acted directly or indirectly on behalf of Booby Trap and is an employer within the meaning of the FLSA. Bruso hired and fired workers at the Booby Trap, scheduled workers, and set employment policies regarding their independent contractor designations.

13. Defendant MIKE ARZA ("Arza") owns and operates the Booby Trap. Defendant Arza acted directly or indirectly on behalf of Booby Trap with respect to Plaintiffs and other entertainers and is an employer within the meaning of the FLSA. Arza hired and fired workers at the Booby Trap, scheduled workers, and set employment policies regarding their independent contractor designations.

14. Defendants may be served under Rule 4 of the Federal Rules of Civil Procedure.

## INTERSTATE COMMERCE

15.     Plaintiffs, other entertainers and employees of Booby Trap were engaged in commerce or the production of goods in commerce as defined by the FLSA.

16.     Booby Trap was an enterprise engaged in commerce.

17.     Booby Trap was an enterprise engaging in interstate commerce by having multiple employees regularly selling alcoholic beverages produced and shipped from outside of the State of Florida, regularly serving foods produced and shipped from outside of the State of Florida and having multiple employees regularly processing out-of-state credit card sales in the furtherance of its business.

18.     Booby Trap had out of state customers who regularly frequented the club.

19.     Booby Trap had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

20.     Booby Trap had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

## COMMON FACTUAL ALLEGATIONS

21.     Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b).

22.     During the three years prior to the filing of this complaint Defendants owned and operated the Booby Trap located in Miami, Florida.

23.     Booby Trap features nude female dancers ("the Club").

24.     Defendants jointly owned, operated and managed the Booby Trap and were all involved in the day-to-day operation of the Club.

25.     Defendants made the decision to classify Plaintiffs and other dancers as independent contractors rather than employees, and not pay them the minimum wage.

26.     Defendants made the decision to require Plaintiffs and other dancers to pay certain fees and tip-outs each shift.

27.     The Club directly and indirectly controlled dancers' work schedules by requiring them to work a minimum number of shifts and hours per shift or pay a monetary penalty for failure to do so.

28.     The Defendants and the Booby Trap's house moms and managers directly and indirectly controlled the appearance and dress of dancers at Booby Trap.

29.     The Defendants and the Booby Trap's house moms and managers had the authority to require dancers to change their appearance and attire at work.

30. The Defendants and the Booby Trap's house moms and managers required dancers to change their appearance and attire at work.

31. The Defendants and the Booby Trap's managers had the authority to suspend and discipline dancers.

32. The Defendants and the Booby Trap's managers directly and indirectly supervised dancers on a day-today basis.

33. The Defendants and the Booby Trap required dancers to attend meetings to discuss workplace issues.

34. The Defendants and the Booby Trap used mandatory dancer meetings to discuss problems with dancer dress, hair, makeup, weight, and appearance, club promotional efforts and other work-related issues.

35. Defendants and the Booby Trap made all advertising, marketing and promotional decisions regarding the club and paid all costs associated with advertising marketing and promoting the club.

36. Defendants and the Booby Trap required customers to pay a "door fee" to enter the business and thus had ultimate authority as to which individuals were allowed to enter the club as customers.

37. Defendants and the Booby Trap's managers and house moms had the discretion not to permit a dancer to perform if she arrived to a scheduled shift after a certain time.

38. The Booby Trap's DJ's have given dancers instructions to report to the stage and/or remove clothing while on stage.

39. The Booby Trap's DJ's called dancers to dance on stage on a set rotation established by the dancers' time of arrival.

40. The Booby Trap enforced a mandatory check-out process for the club's dancers, which included the payment of various fees to the club and its managers, house moms, and DJs.

41. The Booby Trap maintained and enforced written and unwritten rules of conduct for dancers.

42. The duties of Booby Trap management included ensuring that dancers complied with club rules and policies.

43. The Booby Trap provided all stages used for dancer performances at the Club.

44. The Booby trap provided poles used for dancer performances at the club.

45. The Booby Trap was responsible for day-to-day purchases of liquor for sale at the Club.

46. The Booby Trap did not require the club's dancers to have prior experience as dancers or any formal or special training.

47. When an individual wanted to work as a dancer at the Booby Trap, a house mom and manager generally performed a "body check" to determine if the individual's body was suitable for performing at the club.

48. The Booby Trap required Plaintiffs to work a minimum number of days per week, including a minimum number of "slow days," or pay fines.

49. The Booby Trap advertised its business using pictures of scantily clad women.

50. The presence of nude dancers was integral to Booby Trap's business success and operations.

51. Plaintiffs did not have their own business entities or employees associated with their dance work, and the job required no management of other employees.

52. Plaintiffs were "employees" as that term is used in the FLSA, rather than independent contractors, as a matter of economic reality.

53. Defendants were Plaintiffs' "employers" as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

54. Plaintiffs were not exempt from the minimum wage or overtime requirements of the FLSA.

55. Defendants paid no wages or other compensation to Plaintiffs.

56. Plaintiffs worked entirely for tips paid by the Club's customers.

57. Defendants classified Plaintiffs as independent contractors.

## COLLECTIVE ACTION ALLEGATIONS

58. As alleged herein, Defendants are liable under the FLSA for willfully failing to properly compensate Plaintiffs and all other similarly situated current and former adult entertainers employed by Defendants during the three year period prior to commencement of this action, and as such, notice should be sent to past and present adult entertainers employed by Defendants BT'S ON THE RIVER, LLC dba BOOBY TRAP ON THE RIVER ("Booby Trap"), a Florida Limited Liability Company, MIKE BRUSO, and MIKE ARZA during the three year period prior to initiation of this action, pursuant to 29 U.S.C. § 216(b).

59. As alleged herein, Defendants deprived Plaintiffs and other similarly situated adult entertainers of compensation to which they are entitled through the following singular practices, decisions or plans:

(a) Requiring adult entertainers to work without compensation;

(b) Requiring adult entertainers to perform work during times for which they could not receive tips without compensation;

(c) Refusing to compensate adult entertainers one- and one-half times minimum wage when their total hours worked exceeded 40 hours;

(d) Requiring adult entertainers to share tips with non-tipped employees; and

(e) Requiring adult entertainers to pay fees for the right to work.

60. Based thereon, Defendants have repeatedly and intentionally engaged in a similar practice, commonly and typically applied to the class of adult entertainers, of improperly depriving compensation to which such adult entertainers are entitled under the FLSA.

61. Questions that are common among the FLSA Collective Action members include, but are not limited to:

(a) whether Defendants have and continue to unlawfully refuse to pay adult entertainers proper compensation, in violation of the FLSA, 29 U.S.C. § 201, *et seq.*, for all work performed;

(b) whether Defendants have and continue to unlawfully refuse to pay adult entertainers proper overtime compensation, in violation of the FLSA, 29 U.S.C. § 201, *et seq.*, through the aforementioned policies and practices;

(c) whether Defendants' failure to pay such proper compensation is willful within the meaning of the FLSA.

62. There are numerous similarly situated current and former adult entertainers employed by Defendants in venues owned and/or operated by Defendants BT'S ON THE RIVER, LLC dba BOOBY TRAP ON THE RIVER ("Booby Trap"), a Florida Limited Liability Company, MIKE BRUSO, and MIKE ARZA who have been subject to the same policies and practices alleged herein, in violation of the FLSA, and who would benefit from the issuance of a Court-supervised notice of the present lawsuit and the opportunity to join in the present lawsuit. Those similarly situated employees are known to Defendants and are readily identifiable by Defendants' records.

63. Each of the Plaintiffs, identified in Paragraph 1, consented to sue in this action pursuant to 29 U.S.C. § 216(b). Additional potential collective action members may execute and file forms consenting to opt-in to join as a plaintiff in the instant action. Copies of the Plaintiffs' Notices of Consent are attached hereto as Exhibit 1.

64. Plaintiffs, on behalf of themselves and other similarly situated current and former employees, bring this collective action against Defendants under the

FLSA, 29 U.S.C. § 201, *et seq*. for failure to pay minimum wage and overtime compensation.

65. Plaintiffs and others similarly situated (the "FLSA Collective"), are individuals who are current and former adult entertainer employees of Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

## COUNT ONE
## VIOLATION OF 29 U.S.C. §§ 206 AND 215

66. Paragraphs 1 through 65 are incorporated herein by this reference.

67. Plaintiffs were employees covered by the FLSA and entitled to the minimum wage protections set forth in FLSA § 6(a), 29 U.S.C. § 206(a).

68. Defendants failed to compensate Plaintiffs at an hourly rate above or equal to the minimum wage.

69. Defendants willfully failed to compensate Plaintiffs at an hourly rate above or equal to the minimum wage.

70. Plaintiffs are entitled to payment of their minimum wages in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

71. Defendants' requirement that Plaintiffs pay fees and fines to the Club and its managers, house moms, and DJs violated the "free and clear" requirement of 29 CFR 531.35.

72. Plaintiffs are entitled to receive all unpaid minimum wages from Defendants for the hours that they worked.

73. Plaintiffs are entitled to recover from Defendants as part of their wage loss, all fees, tip-outs and fines that they were required to pay in order to work at the Club.

74. Defendants' violation of the FLSA was willful. In other words, Defendants knew or showed reckless disregard for the fact that their wage and "pay to work" policies violated the FLSA.

75. As a result of Defendants' willful underpayment of minimum wages as alleged above, Plaintiffs are entitled to liquidated damages in accordance with FLSA §16(b), 29 U.S.C. § 216(b).

76. Defendants failed to act in good faith in implementing and enforcing their wage and "pay to work" policies and their implementation and enforcement of these policies were unreasonable.

77. Defendants violated the record keeping requirements of the FLSA.

78. As a result of its underpayment of minimum wages as alleged above, Defendants are jointly and severally liable to Plaintiffs for their litigation costs, including their reasonable attorney's fees, in accordance with FLSA §16(b), 29 U.S.C. § 216(b).

## COUNT TWO: REIMBURSEMENT OF HOUSE FEES AND TIPS

79. Plaintiffs hereby incorporate paragraphs 1-65 above by reference as if fully set forth fully herein.

80. Defendants further violated the FLSA by requiring the Plaintiffs and similar situated exotic dancers to pay house fees and tip outs as a condition of employment.

81. Defendant further violated the FLSA by requiring that Plaintiffs and similarly situated dancers pay twenty percent (20%) of all tips collected back to the club and the end of every shift worked.

82. Defendants' house fee and tip out requirement benefitted the Defendants and caused the Plaintiffs' and similar situated exotic dancers potential wages to fall well below the minimum wage.

83. Pursuant to the FLSA, specifically 29 CFR § 531.35, wages must be paid "free and clear."

84. 29 CFR § 531.35, states in part "wages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." The wage requirements of the Act will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee."

85. The house fees paid by the Plaintiffs and similarly situated exotic dancers constitute "illegal kickbacks" pursuant to 29 CFR § 531.35.

86. The tip-outs paid by the Plaintiffs and similarly situated exotic dancers to the "house mom" the DJ and security constitute "illegal kickbacks" pursuant to 29 CFR § 531.35.

87. These sums must be returned to the Plaintiffs and similarly situated exotic dancers to bring Defendants' minimum wage obligations to the Plaintiffs and similarly situated exotic dancers consisted with the requirements of the FLSA.

88. Defendants' policy of house fees and tip outs were not recorded in the federal and state tax returns or gross receipts.

89. Defendants did not record the number of fees for table and lap dances performed by the Plaintiffs and similarly situated exotic dancers during the duration of Plaintiffs employment.

90. Defendants are not entitled to a set off or tip credit for sums earned by the Plaintiffs and similarly situated exotic dancers.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that this Court:

a. Enter a declaratory judgment or order finding that (i) Plaintiffs are "employees" under the FLSA; (ii) Defendants are "employers" as that term is defined under the FLSA; and (iii) Defendants violated the minimum wage and record keeping provisions of the FLSA;

b. Award Plaintiffs an amount to be determined at trial against Defendants for unpaid minimum wages, including unlawful deductions due under the FLSA;

c. Award Plaintiffs reimbursement of all tip-outs, house fees, and all other sums unlawfully paid to the Booby Trap;

d. Award Plaintiffs liquidated damages against Defendants in the same amount as their unpaid minimum wages;

e.  Award Plaintiffs prejudgment interest on all amounts owed;

f.  Conditional certification of this case as a collective action under the FLSA;

g.  Award Plaintiffs their reasonable attorney's fees and costs of litigation under the FLSA; and

h.  Award any and such other relief this Court deems just, equitable and proper.

Respectfully submitted this __15th__ day of __March__ 2022,

        s/ Carlos V. Leach
        Carlos V. Leach, Esquire– LEAD COUNSEL
        FBN: 0540021
        Email: cleach@theleachfirm.com

        Edward W. Wimp, Esquire
        FBN: 1015586
        Email: ewimp@theleachfirm.com

        THE LEACH FIRM, P.A.
        631 S. Orlando Ave., Suite 300
        Winter Park, FL 32789
        Telephone: (407) 574-4999
        Facsimile: (833) 813-7513

        Mutepe Akemon, Esquire
        GA Bar No. 434260 – Pro Hac Vice forthcoming
        mutepe.akemon@richardslegal.com
        **The Richards Law Group, LLC**
        P.O. Box 360295
        Decatur, GA 30036
        Telephone: 404-289-6816
        Facsimile:  404-795-0727
        Attorneys for Plaintiff