UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:22-CV-20772-KING/DAMIAN

YAMILEE BENNETT, MARIA BUSH
AMINATA MBAYE, ALON ROBERTS
and AFRICA WILLIAMS,

    Plaintiffs,

v.

BT'S ON THE RIVER, LLC d/b/a
BOOBY TRAP ON THE RIVER, a
Florida Limited Liability Company;
MIKE BRUSO, an individual; and
MIKE ARZA, and individual;

    Defendants.
_____/

**REPORT AND RECOMMENDATION ON DEFENDANTS'
MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS [ECF NO. 10]**

THIS CAUSE is before the Court on Defendants, BT's on the River LLC, Mike Bruso, and Mike Arza's (collectively, "Defendants"), Motion to Compel Arbitration and Stay Proceedings [ECF No. 10 ("Motion")]. Defendants move the Court to compel Plaintiff Aminata Mbaye ("Ms. Mbaye" or "Plaintiff") to submit to arbitration and to stay proceedings as to her claims. This matter was referred to the undersigned by the Honorable James Lawrence King, United States District Judge. [ECF No. 12]. *See* 28 U.S.C. § 636(b)(1)(B).

The undersigned has reviewed the parties' briefing [ECF Nos. 10, 17, 24], the pertinent portions of the record, and all relevant authorities and is otherwise fully advised in the premises. For the reasons that follow, the undersigned recommends that Defendants' Motion to Compel Arbitration and Stay Proceedings [ECF No. 10] be granted.

## I.  BACKGROUND

This is a collective action for unpaid minimum wages and reimbursement of fees and tips pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"). *See* [ECF No. 1 ("Complaint")]. Plaintiffs are current and former exotic dancers at Defendant BT's on the River ("BT's"), which is owned by Defendants Bruso and Arza. *Id.* at ¶¶ 10-13. Plaintiffs allege that Defendants failed to pay them minimum wage and required them to pay "house fees," as well as twenty percent of all tips collected, to BT's. *Id.* ¶¶ 68, 80, 81.

Unlike the other Plaintiffs in this action, Ms. Mbaye signed a Dancer Performance Lease Agreement (the "Agreement") with BT's which contains an arbitration provision that requires her to arbitrate any controversy or claim arising out of her association with the club. *See* Ex. A to Motion. Paragraph 14 of the Agreement provides in part:

> ANY CONTROVERSY, DISPUTE, OR CLAIM . . . ARISING OUT OF THIS LEASE OUT OR ENTERTAINER PERFORMING AT THE CLUB, WHETHER CONTRACTUAL, IN TORT, OR BASED UPON COMMON LAW OR STATUTE, SHALL BE EXCLUSIVELY DECIDED BY BINDING ARBITRATION HELD PERSUANT [sic] TO THE FEDERAL ARBITRATION ACT ("THE FAA"), AND SHALL BE ADMINISTERED BY A NEUTRAL ARBITRATOR AGREED UPON BY THE PARTIES, WHO SHALL BE PERMITTED TO AWARD, SUBJECT ONLY TO THE RESTRICTIONS CONTAINED IN THIS PARAGRAPH 14, ANY RELIEF AVAILABLE IN COURT. . . THE PARTIES WAIVE ANY RIGHT TO LITIGATE SUCH CLAIMS IN A COURT OF LAW, AND WAIVE THE RIGHT TO A TRIAL BY JURY. THE PROCEEDINGS SHALL BE CONDUCTED IN ACCORDANCE WITH THAT LEVEL OF DUE PROCESS REQUIRED FOR ARBITRATIONS. THE ARBITRATOR'S DECISION SHALL BE FINAL, SUBJECT ONLY TO REVIEW UNDER THE FAA. . . THE ARBITRAOTOR SHALL HAVE THE EXCLUSIVE AUTHORITY TO RESOLVE ANY DISPUTES OVER THE VALIDITIY AND/OR ENFORCEABILITY OF ANY PART OF THE LEASE, INCLUDING THESE ARBITRATION PROVISIONS.

Agreement at ¶ 14 (alterations added). Regarding attorney's fees and costs, Paragraph 14 of the Agreement further states:

> THE COST OF ARBITRATION SHALL BE BORNE EQUALLY BY THE ENTERTAINER AND THE CLUB UNLESS THE ARBITRATOR CONCLUDES THAT A DIFFERENT ALLOCATION IS REQUIRED BY LAW.

*Id.* at ¶ 14. And the Agreement contains a severability clause at Paragraph 16 which provides:

> In the event any provision or part of this Lease shall be held to be invalid or unenforceable, according to its terms by any court or tribunal having jurisdiction over Lessor, Lessee or the subject matter of this Lease, such holding shall not affect the validity of any other provisions of this Lease, which shall remain in effect notwithstanding the invalidity of any such provisions.

*Id.* at ¶ 16.

## II. PROCEDURAL HISTORY

On March 15, 2022, Plaintiffs filed the Complaint. [ECF No. 1]. On May 23, 2020, Defendants filed their Answer and Affirmative Defenses as to all Plaintiffs except Ms. Mbaye [ECF No. 11], and they filed the instant Motion to Compel Arbitration and Stay Proceedings as to Ms. Mbaye [ECF No. 10]. Ms. Mbaye filed her Response to the Motion on June 30, 2022 [ECF No. 17], and Defendants filed their Reply on July 14, 2022 [ECF No. 24].

The Motion is now fully briefed and ripe for adjudication.

## III. LEGAL STANDARDS

The Federal Arbitration Act ("FAA") governs the validity of arbitration agreements. *Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1329 (11th Cir. 2014) (citation omitted). The FAA "embodies a liberal federal policy favoring arbitration agreements." *Id.* (internal quotations omitted). The Court engages in a 2-part inquiry to determine whether a dispute is arbitrable under the FAA: "(1) whether the parties agreed to arbitrate the dispute," and (2) "whether 'legal constraints external to the parties' agreement foreclosed arbitration.'" *See Cheshire v. Fitness & Sports Clubs, LLC*, 382 F. Supp. 3d 1329, 1332 (S.D. Fla. 2019)

(Dimitrouleas, J.) (citing *Klay v. Pacificare Health Sys., Inc.*, 389 F.3d 1191, 1200 (11th Cir. 2004)).

An arbitration agreement governed by the FAA is presumed to be valid and enforceable. *See Palidino v. Avnet Computer Technologies, Inc.*, 134 F.3d 1054, 1057 (11th Cir. 1998) ("The FAA creates a presumption in favor of arbitrability."); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."). Furthermore, the party resisting arbitration bears the burden of showing that the arbitration provision is invalid or does not encompass the claims at issue. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000).

The Court considers a motion to compel arbitration under a summary judgment-like standard and may decide the motion as a matter of law where there is no genuine dispute of fact. *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016). A dispute is not "genuine" if unsupported by the evidence; "conclusory allegations without specific supporting facts have no probative value." *Id.*

IV. **ISSUES RAISED IN THE MOTION AND THE PARTIES' MEMORANDA**

Defendants argue that Ms. Mbaye must arbitrate the claims at issue in this action because of the Agreement between the parties in which Ms. Mbaye agreed to arbitrate all claims and controversies against Defendant BT's. Mot. at ¶¶ 6-8. According to Defendants, the arbitration provision in the Agreement encompasses Ms. Mbaye's employment-related claims at issue in this case. *Id.* at ¶ 8.

In her Response, Ms. Mbaye does not dispute the existence of the Agreement or its authenticity. Nor does she contend that her FLSA claims are not encompassed by the

arbitration provision in the Agreement. She argues instead that the Agreement is unenforceable because it is unconscionable under Florida law. Resp. at 3. Specifically, she argues that the Agreement is both procedurally and substantively unconscionable. *See id*. She also argues that the arbitration provision in the Agreement cannot be enforced because it is vague and ambiguous as to the method of selecting an arbitrator and the process of arbitration. *Id*. at 12. Lastly, she argues that if the Court finds the arbitration agreement is enforceable, it should not be applied to any claims that stem from Defendants' conduct that occurred before the date it was executed. *Id*. at 14.

In their Reply, Defendants emphasize that Ms. Mbaye does not challenge the existence of the Agreement, the authenticity of her signatures, or that the subject matter of the lawsuit is covered by the arbitration provision, and, therefore, the arbitration provision should be enforced. *See* Reply at 1. Moreover, Defendants contend that Ms. Mbaye has not provided any evidence that the Agreement is procedurally unconscionable and that the Agreement is not procedurally unconscionable because Ms. Mbaye could seek work elsewhere. Reply at 3-4. Defendants also argue that the Agreement is not substantively unconscionable because it contains a severability provision and, moreover, that the arbitration provision itself does not harm Ms. Mbaye's substantive rights under the FLSA. *Id*. at 6-9. Lastly, Defendants contend that Ms. Mbaye failed to submit evidence that any of Defendants' challenged conduct occurred before the Agreement was signed but that, nevertheless, the case law supports a finding that the arbitration agreement applies to all matters arising out of Ms. Mbaye's association with the club. *Id*. at 10.

## V.   DISCUSSION

Initially, because Ms. Mbaye does not dispute the existence of the Agreement, its authenticity, or whether her FLSA claims are encompassed by its arbitration provision, the Court need only determine whether the Agreement is unconscionable, whether the arbitration provision is vague and ambiguous, and whether the Agreement is enforceable as to conduct occurring before the date it was executed.

### A.  *Whether the Agreement is Unconscionable*

Whether an arbitration provision is unconscionable is a question of state law, and an arbitration provision is interpreted according to the forum state's rules governing contract construction. *Dale v. Comcast Corp.*, 498 F.3d 1216, 1219 (11th Cir. 2007). When, as here, a party claims unconscionability, Florida law requires a "showing of *both* procedural and substantive unconscionability" to invalidate a contract. *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1134 (11th Cir. 2010) (emphasis in original). Procedural unconscionability relates to the manner in which the contract was entered; substantive unconscionability relates to the terms of the contract itself. *See Basulto v. Hialeah Automotive*, 141 So. 3d 1145, 1157 (Fla. 2014). While both of these elements must be present, they need not be present to the same degree. *Id*. at 1159.

Ms. Mbaye argues that the manner in which she was required to enter into the Agreement, coupled with the terms contained therein, make the Agreement both procedurally and substantively unconscionable. Resp. at 3-4.

### *1. The Agreement Is Not Procedurally Unconscionable.*

First, Ms. Mbaye asserts that the Agreement is procedurally unconscionable because it was presented to her in a way that precluded her from reviewing it thoroughly or with the assistance of counsel. Resp. at 4.

In reply, Defendants assert that Ms. Mbaye has not provided any evidence that the Agreement is procedurally unconscionable and, moreover, that the Agreement is not procedurally unconscionable because Ms. Mbaye could have rejected it and sought employment elsewhere. Reply at 3-4.

To determine whether a contract is procedurally unconscionable under Florida law, the Court considers the following: (1) the manner in which the contract was entered into; (2) the relative bargaining power of the parties and whether the complaining party had a meaningful choice at the time the contract was entered into; (3) whether the terms were merely presented on a "take-it-or-leave-it" basis; and (4) the complaining party's ability and opportunity to understand the disputed terms of the contract. *Pendergast*, 592 F.3d at 1135 (citing *Powertel, Inc. v. Bexley*, 743 So. 2d 570, 574 (Fla. 1st DCA 1999)). "Under Florida law, the central question in the procedural unconscionability analysis is whether the [individual] has an absence of meaningful choice in whether to accept the contract terms." *Id.* (citing *Belcher v. Kier*, 558 So. 2d 1039, 1042 (Fla. 2nd DCA 1990)) (alteration added).

In support of her Response in opposition to the Motion, Ms. Mbaye submitted a declaration in which she describes the circumstances under which she entered into the Agreement. Resp. at Ex. B ("Mbaye Declaration"). In her Declaration, she states that on July 18, 2021, she arrived to work, paid the "house fee" for her upcoming shift, and then was presented with the Agreement. *Id.* at ¶ 6. According to Ms. Mbaye, she was told that if she

7

did not sign the Agreement, she would not be allowed to work and she would not receive a refund of the "house fee" she had just paid to start her shift. *Id*. at ¶ 7. She also claims she was not given an opportunity to take the Agreement home or have it reviewed by an attorney because it was presented to her on an iPad. *Id*. at ¶¶ 7-8.

Ms. Mbaye contends the Agreement is an adhesion contract, which she defines as a "standardized contract form offered to consumers of goods and services on essentially a 'take it or leave it' basis without affording [the] consumer a realistic opportunity to bargain and under such conditions that [the] consumer cannot obtain [the] desired product or services except by acquiescing in the form contract." Resp. at 5 (citing Black's Law Dictionary, 6th Ed. (1990)).

In other words, Ms. Mbaye asserts that all of the factors relevant to procedural unconscionability weigh in favor of finding the Agreement procedurally unconscionable.

In their Reply, Defendants contend that Ms. Mbaye has not provided any evidence that the Agreement is procedurally unconscionable. Reply at 4.

Bearing in mind that Ms. Mbaye carries the burden of demonstrating that the Agreement is unenforceable, the undersigned considers her arguments concerning procedural unconscionability. The undersigned notes that Defendants' claim that Ms. Mbaye provided no evidence to support her arguments ignores her Declaration, in which she alleges facts directly relevant to the issue of procedural unconscionability.

> a) *The Manner In Which She Entered Into The Agreement*

In her Declaration, Ms. Mbaye states that she was shown the Agreement on an iPad immediately before her shift and after she had paid her nonrefundable house fee and was told she would not be able to work her shift unless she signed it. Mbaye Decl. at ¶ 7. Defendants,

8

on the other hand, did not submit any evidence to rebut Ms. Mbaye's narrative of events. Ms. Mbaye's unrebutted description of the manner in which she was required to enter into the Agreement is troublesome and weighs in favor of a finding of procedural unconscionability.

### b) *The Parties' Relative Bargaining Power*

It is undeniable that a disparity in bargaining power exists in most employer-employee relationships. *Bhim v. Rent-A-Ctr., Inc.*, 655 F. Supp. 2d 1307, 1315 (S.D. Fla. 2009) (Moore, J.). *See also Henry v. Pizza Hut of Am., Inc.*, No. 607CV-01128-ORL-DAB, 2007 WL 2827722, at *7 (M.D. Fla. Sept. 27, 2007). There is no indication that the circumstances were any more favorable for Ms. Mbaye here. This disparity also leans towards a finding that the Agreement is procedurally unconscionable. *Id*.

### c) *Whether The Agreement Was Presented On A Take-It-Or-Leave-It Basis*

Although the undersigned disagrees with Ms. Mbaye that the Agreement is an adhesion contract,[1]—similar "take-it-or-leave-it" agreements can be procedurally unconscionable in the context of employer-employee relationships where the employee lacks employment alternatives.[2] *See Bhim*, 655 F. Supp. 2d at 1315 (finding that plaintiff did not show she lacked employment alternative to defendant in the event that she chose to "leave it"); *see also Henry*, No. 607CV-01128-ORL-DAB, 2007 WL 2827722, at *7 (finding that plaintiff did not allege that he lacked alternatives to working for defendant).

---

[1] An adhesion contract is "a standardized contract form offered *to consumers of goods and services* on essentially a 'take it or leave it basis[.]'" *Powertel*, 743 So. 2d at 574 (emphasis added).

[2] The undersigned notes a potential dispute among the parties regarding whether Ms. Mbaye was an employee of Defendants and emphasizes that this Report and Recommendation makes no findings regarding the legal nature of the parties' relationship.

Ms. Mbaye alleges that she did not have a meaningful choice regarding whether or not to sign the Agreement because she had already paid the house fee to start her shift and would have lost both the fee and her employment if she did not sign the Agreement. Resp. at 6. The circumstances presented here are slightly different from those in *Bhim* and *Henry* because Ms. Mbaye faced an additional financial loss (the unreimbursable house fee) if she did not sign the Agreement. However, she does not indicate how much the house fee was, and she provides no support for the proposition that a financial loss alone is a sufficient basis to find a "take-it-or-leave-it" employment contract procedurally unconscionable. Moreover, she has not argued nor presented evidence that she had no alternative employment options in the event she chose to "leave it." Thus, based on the record presented, the undersigned finds that this factor does not support a finding that the Agreement was procedurally unconscionable.

    d) <u>Ms. Mbaye's Ability And Opportunity To Understand The Terms Of The Agreement</u>

Finally, Ms. Mbaye indirectly contends that she did not have the ability and opportunity to understand the terms of the Agreement, which was presented to her on an iPad immediately before her shift. Mbaye Decl. at ¶¶ 7-8. She does claim, in her Declaration, that she could not take the Agreement home or review it with an attorney. *Id*. at ¶ 8. However, it is not clear whether Ms. Mbaye actually asked to take the Agreement home to review or to have it reviewed by an attorney. Nor is it clear if she expressed any disagreement or requested clarification of any of its terms. Thus, based on the record, the undersigned finds that this factor also does not lean in favor of a finding that the Agreement is procedurally unconscionable.

Thus, although the allegations and evidence presented demonstrate that the manner in which Ms. Mbaye was presented with the Agreement was problematic, and she surely

lacked bargaining power such that it would have been difficult for her to reject or negotiate its terms, she has not shown that she had no alternative employment available nor that she actually asked for more time to review the Agreement before signing it. Therefore, after weighing all the relevant factors, the undersigned finds that Ms. Mbaye has not satisfied her burden of demonstrating that the Agreement is procedurally unconscionable.

Moreover, although she presented some evidence indicating the Agreement may have had some elements of procedural unconscionability, that is outweighed by Ms. Mbaye's failure to establish substantiative unconscionability, as discussed below. *See Aquino v. BT's on the River, LLC*, No. 20-20090-CIV, 2020 WL 4194477, at *4 (S.D. Fla. July 21, 2020) (Scola, J.) ("[W]hen assessing procedural and substantive unconscionability, 'a balancing approach is employed allowing one prong to outweigh another provided that there is at least a modicum of the weaker prong'") (quoting *Basulto*, 141 So. 3d at 1159).

### 2. *The Agreement Is Not Substantively Unconscionable.*

Under Florida law, the issue of substantive unconscionability focuses on whether the terms of the agreement itself are "unreasonable and unfair." *Pendergast*, 592 F.3d 1139 (citing *Powertel*, 743 So. 2d at 574). To determine whether an agreement is substantively unconscionable, courts consider "whether the disputed terms limit available remedies, exclude punitive damages, prevent equitable relief, impose substantial costs, or lack mutuality of obligation with respect to the arbitration of disputes." *E.E.O.C. v. Taco Bell of Am., Inc.*, 2007 WL 809660, at *1 (M.D. Fla. Mar. 15, 2007) (citing *Palm Beach Motor Cars Ltd., Inc. v. Jeffries*, 885 So. 2d 990, 992 (Fla. 4th DCA 2004)). As the Eleventh Circuit has explained, an arbitration provision may be unenforceable if it "preclude[s]" the plaintiff "from effectively

vindicating [her] federal statutory right in the arbitral forum." *Musnick v. King Motor Co. of Ft. Lauderdale*, 325 F.3d 1255, 1259 (11th Cir. 2003).

Ms. Mbaye asserts that the arbitration provision in the Agreement is substantively unconscionable because it requires the parties to split the costs of arbitration, which, she claims, precludes her from vindicating her federal statutory rights under the FLSA. Resp. at 9. She also claims that several other terms of the Agreement outside of the arbitration provision are unconscionable because they require her to "waive statutory rights and legal remedies[.]" *Id.* at 7.

In reply, Defendants argue that contrary to Ms. Mbaye's position, the arbitration provision provides full protection for her statutory rights under the FLSA. Reply. at 6. Defendants also assert that any problematic portions of the Agreement outside the arbitration provision can be severed if found to be unconscionable. *Id.* at 8.

The undersigned first addresses the issues raised concerning the arbitration provision before turning to the issues regarding other provisions in the Agreement.

      a)   <u>The Arbitration Provision</u>

Ms. Mbaye argues that the arbitration provision is substantively unconscionable because it requires splitting the costs of arbitration, which she claims precludes her from vindicating her federal statutory rights due to the amount that she would have to pay in costs relative to her potential damages award. *See* Resp. at 9-12. Ms. Mbaye states that she lacks the necessary resources to split the costs of the arbitration and, therefore, will not be able to vindicate her rights under the FLSA. Resp. at 10. In support, counsel for Ms. Mbaye submitted several final arbitration awards in similar FLSA claims against gentlemen's clubs to show the potential costs of the arbitration. *See* Ex. C to Resp.

Defendants contend, however, that the arbitration provision protects Ms. Mbaye's statutory rights because, rather than require the splitting of the costs, the Agreement allows the arbitrator to allocate fees and costs in accordance with the FLSA ("as required by law"). Reply at 6-7.

The arbitration provision states, in relevant part:

> THE COST OF ARBITRATION SHALL BE BORNE EQUALLY BY THE ENTERTAINER AND THE CLUB UNLESS THE ARBITRATOR CONCLUDES THAT A DIFFERENT ALLOCATION IS REQUIRED BY LAW.

Agreement at ¶ 14.

The provision clearly states that "the cost of arbitration shall be borne equally . . . *unless the arbitrator concludes that a different allocation is required by law.*" Agreement at ¶ 14 (emphasis added). Thus, if Ms. Mbaye prevails in arbitration, she can petition the arbitrator to allocate arbitration costs in accordance with the cost-shifting provision of the FLSA. In fact, all three arbitration awards submitted by Plaintiff's counsel support this interpretation of the provision and undermine her argument; in all three arbitration awards submitted, the arbitrators ordered the non-prevailing gentlemen's clubs to cover the costs of arbitration. *See* Ex. C to Resp. Ms. Mbaye's "mere speculation" that the arbitrator may interpret this arbitration provision differently than the ones she submitted and inconsistently with the FLSA does not make the Agreement unconscionable. *See Mackler v. Fitness Int'l, LLC*, No. 16-80150-CIV, 2016 WL 7756623, at *5 (S.D. Fla. Apr. 22, 2016) (Middlebrooks, J.) ("Mere speculation that the arbitrator may interpret the attorney's fees provision inconsistently with applicable law does not make the Agreement unconscionable."); *see also PacifiCare Health Systems, Inc. v. Book*, 538 U.S. 401, 406-08 (2003) ("We should not, on the basis of 'mere speculation' that an arbitrator might interpret these ambiguous agreements in a manner that casts their enforceability into

doubt, take upon ourselves the authority to decide the antecedent question of how the ambiguity is to be resolved.").

Thus, the undersigned finds that Ms. Mbaye has not satisfied her burden of demonstrating that the arbitration provision is substantively unconscionable.

### b) Other Provisions In The Agreement

Ms. Mbaye also asserts that several other provisions in the Agreement are unconscionable because they require her to "waive statutory rights and legal remedies[.]" Resp. at 7. In particular, she contends that "[b]eginning on page 2 and continuing to page 9," the Agreement requires her to relinquish certain statutory rights, including "how 'employee' and 'employer' are defined (Exhibit A, pg. 2-3), the right to minimum wages (Exhibit A, pg. 3-4), the right to retain her tips free and clear (Exhibit A, pg. 3-4), records keeping and retention (Exhibit A, pg. 5), and the right to recover attorney's fees Exhibit A, pg. 9)." *Id*.

The Supreme Court has addressed the issue of whether courts should consider other provisions in the contract after they are satisfied that the arbitration provision is enforceable and held that under such circumstances, the courts should only address challenges regarding the arbitration provision. *See Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 404 (1967); *see also John B. Goodman Ltd. P'ship v. THF Const., Inc.*, 321 F.3d 1094, 1095 (11th Cir. 2003) (applying *Prima Paint* separability doctrine). Therefore, federal courts confronted with motions to compel arbitration are only authorized to address "issues relating to the making and performance of the agreement to arbitrate" itself, not general challenges to an agreement containing an arbitration provision as a whole. *Prima Paint Corp.*, 388 U.S. at 404. "[O]nce the district court is satisfied that the parties actually agreed to arbitrate the dispute, it is for the arbitration panel, not the district court, to determine whether the

underlying contract[] in general [is] enforceable[.]"*John B. Goodman Ltd. P'ship*, 321 F.3d at 1095.

As discussed above, Ms. Mbaye has not satisfied her burden of demonstrating that the arbitration provision in the Agreement at issue is unconscionable. Having addressed the issues of unconscionability relating to the arbitration provision itself and determined that the provision is enforceable, the Court cannot proceed to resolve issues with the Agreement outside of the arbitration provision. The question of whether other provisions in the Agreement are unconscionable is for the arbitrator to decide. *See Offshore Marine Towing, Inc. v. Gismondi*, 473 F. Supp. 3d 1353, 1357–58 (S.D. Fla. 2020), *reconsideration denied*, No. 20-CIV-60657-RAR, 2020 WL 5742646 (S.D. Fla. Aug. 25, 2020) (Ruiz, J.).

In any event, the undersigned notes that the Agreement includes a severability provision (Agreement at ¶ 16), and, therefore, the Agreement is nonetheless enforceable even if it contains unenforceable provisions. *Aquino*, No. 20-20090-CIV, 2020 WL 4194477, at *5 ("[A]n agreement to arbitrate that contains unenforceable provision is nevertheless enforceable if those provisions can be severed from the rest of the contract."). Where, as here, the allegedly invalid terms do not render the arbitration clause void and the challenged clauses may be severed without rendering the entire Agreement void as a matter of law, the undersigned finds that the challenged terms are severable and do not affect the enforceability of the arbitration provision. *See Aquino*, No. 20-20090-CIV, 2020 WL 4194477, at *5; *see also Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1331 (11th Cir. 2005); *Local No. 234 of United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada v. Henley & Beckwith, Inc.*, 66 So. 2d 818, 821-22 (Fla. 1953).

Thus, Ms. Mbaye's arguments regarding provisions in the Agreement outside the arbitration provision are reserved for the arbitration panel and do not affect the undersigned's determination that the arbitration provision is enforceable.

### B. Whether The Arbitration Provision Is Vague And Ambiguous

Ms. Mbaye also argues that the arbitration provision is unenforceable because it contains vague and ambiguous terms. Resp. at 12. Specifically, she claims the provisions concerning the method of selecting an arbitrator and process of arbitration are vague and ambiguous. *Id*.

The arbitration provision states, in part, that "[a]ny controversy, dispute, or claim . . . arising out of this lease . . . shall be exclusively decided by binding arbitration held pursuant to the federal arbitration act (the 'FAA') and shall be administered by a neutral arbitrator agreed upon by the parties." Agreement at ¶ 14. Ms. Mbaye asserts that this phrase is vague because it contains no mechanism to force the parties to agree on an arbitrator. Resp. at 13. She also argues that the phrase: "the proceedings shall be conducted in accordance with the level of due process required for arbitration" is vague because it does not set forth which rules and laws would apply to her claims. *Id*. Therefore, she asserts these vague and ambiguous terms preclude enforcement of the arbitration provision.

The undersigned disagrees. First, Paragraph 17 of the Agreement states that the Agreement is to be construed under Florida law. *Id*. at ¶ 17. Therefore, Florida law applies. Moreover, the Florida Arbitration Code (Section 682.01 *et. seq.*, Florida Statutes) applies to all agreements to arbitrate in Florida and provides a method for appointment of an arbitrator if the agreed method of selection fails. *See* Fla. Stat. § 682.04. Therefore, Florida law resolves any ambiguities concerning the method for selection of an arbitrator and the applicable law

16

and standards. Accordingly, the undersigned finds that these terms do not preclude enforcement of the arbitration provision.

### C. Whether The Agreement is Enforceable As To The Period Before Its Execution

Lastly, Ms. Mbaye argues that, if the Court finds that the Agreement is enforceable, then it is only enforceable from the date it was signed, July 18, 2021, to the present, and is not enforceable as to any claims that stem from Defendants' conduct before then. Resp. at 14. Notably, she claims in her Declaration to have begun working for Defendants on or about February 1, 2019. *See* Mbaye Decl. at ¶ 5. Thus, she seeks to exempt the portion of her claims that stems from her association with Defendants from February 1, 2019, to July 18, 2021. Resp. at 14.

Defendants assert, as a preliminary matter, that there is no evidence that Ms. Mbaye provided services prior to the date the Agreement was executed. Reply at 10. They also argue that Ms. Mbaye provides no legal precedent to support her position and that the legal authority actually contradicts her argument. *Id.*

Upon review of the parties' competing arguments and the relevant legal authorities, the undersigned finds that Ms. Mbaye has not demonstrated that the Agreement should not apply retroactively to claims arising out of Defendants' conduct prior to the Agreement.

Law in the Eleventh Circuit dictates that an arbitration clause need not explicitly state that it applies retroactively. *Caracas v. Rizen Fleet Logistics, Inc.*, No. 1:16-CV-22421, 2016 WL 10931432, at *3 (S.D. Fla. Dec. 22, 2016) (Lenard, J.); *see also Mayfield v. Comcast Cable Commc'ns Mgmt., LLC*, No. 1:15-CV-483-CAP, 2015 WL 10173611, at *2 (N.D. Ga. June 19, 2015) ("In the Eleventh Circuit, an express agreement to arbitrate prior claims is not necessary.") (citing *Belke v. Merrill Lynch, Pierce, Fenner & Smith*, 693 F.2d 1023, 1028 (11th

Cir. 1982), *abrogated by Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985)). Ms. Mbaye does not provide any authority to the contrary.

Thus, given the absence of express language to the contrary, the undersigned finds that the arbitration provision applies to all "controversies, disputes, or claims" between Ms. Mbaye and Defendants although some of those disputes may arise from conduct predating execution of the Agreement. *See* Agreement at ¶ 14.

### D. Whether The Agreement is Enforceable As To The Period Before Its Execution

Lastly, Defendants request that the Court stay Ms. Mbaye's claims pending arbitration. Mot. at 9-10. Pursuant to Section 3 of the FAA, a district court shall stay a pending suit "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration" under a valid arbitration agreement. *Klay v. All Defendants*, 389 F.3d 1191, 1203–04 (11th Cir. 2004) (quoting 9 U.S.C. § 3). For arbitrable issues, the language of Section 3 indicates that the stay is mandatory. *Id*. *See also Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987) ("[A] court must stay its proceedings if it is satisfied that an issue before it is arbitrable ...."). When confronted with litigants advancing both arbitrable and nonarbitrable claims, however, courts have discretion to stay nonarbitrable claims. *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 21 n.23. Courts generally refuse to stay proceedings of nonarbitrable claims when it is feasible to proceed with the litigation. *See Dean Witter Reynolds Inc.*, 470 U.S. at 225 (White, J., concurring) (noting that the "heavy presumption should be that the arbitration and the lawsuit will each proceed in its normal course").

As discussed above, Ms. Mbaye's claims are subject to arbitration. Therefore, the undersigned finds that a stay of Ms. Mbaye's claims in this action pending arbitration is mandatory pursuant to Section 3 of the FAA. *See* 9 U.S.C. § 3. The other Plaintiffs in this

action do not have binding arbitration agreements with Defendants and, therefore, the undersigned finds that their claims can and should proceed while Ms. Mbaye's claims are stayed pending arbitration.

## VI. CONCLUSION

For the reasons set forth above, the undersigned finds that Ms. Mbaye and Defendants entered into a valid agreement to arbitrate her claims, and Ms. Mbaye has failed to carry her burden of demonstrating that their Agreement is unenforceable. The undersigned also finds that Ms. Mbaye's claims should be stayed pending arbitration of her claims. Therefore, Defendants' Motion to Compel Arbitration and Stay Proceedings [ECF No. 10] should be granted.

## VII. RECOMMENDATION

Based on the foregoing, the undersigned respectfully recommends that Defendants' Motion to Compel Arbitration and Stay Proceedings [ECF No 10] be **GRANTED**. The undersigned further recommends that the Court compel Plaintiff Aminata Mbaye to arbitrate her claims and that any challenges regarding the enforceability of other provisions of the Agreement be addressed by the arbitrator. Finally, the undersigned recommends the Court stay proceedings as to only Ms. Mbaye's claims pending arbitration.

The parties will have fourteen (14) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable James Lawrence King, United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the

interest of justice. *See* 28 U.S.C § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY SUBMITTED** in Chambers at Miami Florida, this 5th day of October 2022.

```
                                        _____
                                        MELISSA DAMIAN
                                        UNITED STATES MAGISTRATE JUDGE
```

cc:   Hon. James Lawrence King
      Counsel of Record