**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 1:22-CV-20772-SCOLA/DAMIAN

YAMILEE BENNETT, MARIA BUSH
AMINATA MBAYE, ALON ROBERTS
and AFRICA WILLIAMS,

       Plaintiffs,

v.

BT'S ON THE RIVER, LLC d/b/a
BOOBY TRAP ON THE RIVER, a
Florida Limited Liability Company;
MIKE BRUSO, an individual; and
MIKE ARZA, and individual;

       Defendants.
_____/

**REPORT AND RECOMMENDATION ON
PLAINTIFFS' MOTION FOR FLSA CERTIFICATION AND
ISSUANCE OF COURT-AUTHORIZED NOTICE [ECF NO. 37]**

THIS CAUSE is before the Court on Plaintiffs' Motion for FLSA Certification and Issuance of Court-Authorized Notice, filed September 22, 2022 [ECF No. 37 ("Motion")]. Plaintiffs seek conditional certification of this case as a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"). This matter was referred to the undersigned by the Honorable Robert N. Scola, United States District Judge. [ECF No. 42]. *See* 28 U.S.C. § 636(b)(1)(B).

The undersigned has considered the parties' briefing, including the revised proposed notice submitted by the parties, the pertinent portions of the record, and all relevant authorities and is otherwise fully advised in the premises. The undersigned also heard from the parties, through counsel, at a hearing on the Motion on November 30, 2022. For the

following reasons, the undersigned recommends that the Motion be **GRANTED** in part and **DENIED** in part.

## I.    BACKGROUND

On March 15, 2022, Plaintiffs filed this FLSA collective action seeking unpaid minimum wages (including unlawful kick-backs), liquidated damages, and attorneys' fees. [ECF No. 1 ("Complaint")]. According to the Complaint, the named Plaintiffs are five current and former exotic dancers (hereinafter, "entertainers")[1] at Defendant BT's on the River ("BT's"), which is owned by Defendants Bruso and Arza. Compl. at ¶¶ 10-13. Plaintiffs allege Defendants violated the FLSA by failing to pay them minimum wage and failing to keep accurate records and that BT's required them to pay "house fees," as well as twenty percent of all tips collected, to BT's. *Id.* at ¶¶ 68, 80, 81.

Since the filing of the lawsuit, thirteen additional current/former employees have opted in to join the five Plaintiffs who filed the suit. Defendants have moved to compel three plaintiffs to arbitration based on the Dancer Lease Agreements. The undersigned has issued Reports and Recommendations recommending that all of those motions be granted, and the Court has thus far adopted two of those Reports and Recommendations, sending Plaintiffs Aminata Mbaye and Alon Roberts's claims to arbitration and staying their claims in this Court. [ECF Nos. 53 and 87]. Defendants' Motion as to the third such plaintiff, Marissa Walker, remains pending. On January 10, 2023, the undersigned submitted a Report and Recommendation on Defendants' Motion to Compel Arbitration and Stay Proceedings as to

---

[1] Defendants contend that some of the named Plaintiffs never performed at or worked for BT's.

Plaintiff Walker, wherein the undersigned recommends the Court refer Walker's claims to arbitration and stay her claims in this Court as well. [ECF No. 88].

On September 22, 2022, Plaintiffs filed the Motion now at issue in which Plaintiffs request conditional certification of the collective action under the FLSA and authorization to send notice to putative plaintiffs of the opportunity to join. Mot. at 1. Specifically, Plaintiffs seek conditional certification of the following collective action:

> All entertainers/dancers who worked at BT's on the River at any time on or after [insert date 3 years before issuance of notice].

*Id.* at 3. Plaintiffs submitted a proposed notice and Consent to Join form with the Motion. [ECF No. 37-6].  Defendants filed a Response to the Motion on October 20, 2022 [ECF No. 45], and Plaintiffs filed a Reply on October 28, 2022. [ECF No. 52]. The parties appeared before the undersigned for a hearing on November 30, 2022. *See* [ECF Nos. 67 and 78]. During the hearing, the parties agreed to confer and submit a revised proposed notice and Consent to Join form in line with the undersigned's recommendations made on the record. The parties submitted a revised proposed notice and Consent to Join form to Chambers on December 16, 2022, which the undersigned has reviewed for purposes of the instant Report.

## II.   APPLICABLE LEGAL STANDARDS

Section 216(b) of the FLSA authorizes employees to bring collective actions against employers accused of violating its provisions. *Morgan v. Fam. Dollar Stores, Inc.*, 551 F.3d 1233, 1258 (11th Cir. 2008) (citing 29 U.S.C. § 216(b)). Unlike a Rule 23 class action, where each person falling within a certified class is bound by the judgment unless he or she opts out, each putative plaintiff must affirmatively opt in to a Section 216(b) action. *Bennett v. Hayes Robertson Grp., Inc.*, 880 F. Supp. 2d 1270, 1282 (S.D. Fla. 2012) (King, J.) (citing *De Leon–Granados v. Eller and Sons Trees, Inc.*, 497 F.3d 1214 (11th Cir. 2007)). As a result, the decision to certify a

Section 216(b) action does not, on its own, create a class of plaintiffs as with a Rule 23 class action. *Rojas v. Garda CL Se., Inc.*, 297 F.R.D. 669, 673 (S.D. Fla. 2013) (Rosenbaum, J.) (citing *Morgan*, 551 F.3d at 1259). Consequently, the benefits of an FLSA collective action "depend on employees receiving accurate and timely notice . . . so that they can make informed decisions about whether to participate." *Id.* (citing *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989)).

The Eleventh Circuit has endorsed, but not mandated, a two-stage approach to managing FLSA collective actions in the pretrial phase. *Morgan*, 551 F.3d at 1260.

At the first stage, commonly called the "notice stage," the plaintiff has the burden to show a reasonable basis for his or her claim that (1) there are other similarly situated employees (2) who desire to opt in. *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001);[2] *see Morgan*, 551 F.3d at 1260, *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991).

The FLSA does not define the term "similarly situated." *Morgan*, 551 F.3d at 1259. Nor has the Eleventh Circuit adopted a definition of the term. *Id.* However, the Eleventh Circuit has emphasized that before permitting notice, district courts should be satisfied that there are other employees who desire to opt in and are similarly situated with respect to their job requirements and pay provisions. *Dybach*, 942 F.2d at 1567-68. Later, the Eleventh Circuit elaborated that the plaintiff and putative opt-in plaintiffs' job positions must be similar, but do not need to be identical. *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996). In

---

[2] Although the collective action in *Hipp* was brought under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621, *et seq.*, that Act incorporates by reference the FLSA's collective action provision, *see* 29 U.S.C. § 626(b), and the Eleventh Circuit has found that the *Hipp* procedures apply in both contexts. *See Albritton v. Cagle's, Inc.*, 508 F.3d 1012, 1014 n.1 (11th Cir. 2007) (stating same).

addition, courts in the Southern District of Florida occasionally use the following considerations to assist in determining whether employees are similarly situated:

> 1) whether the plaintiffs all held the same job title; 2) whether they worked in the same geographic location; 3) whether the alleged violations occurred during the same time period; 4) whether the plaintiffs were subjected to the same policies and practices, and whether these policies and practices were established in the same manner and by the same decision maker; [and] 5) the extent to which the actions which constitute the violations claimed by [the plaintiffs] are similar.

*Smith v. Tradesmen Int'l, Inc.*, 289 F. Supp. 2d 1369, 1372 (S.D. Fla. 2003) (King, J.) (citing *Stone v. First Union Corp.*, 203 F.R.D. 532 (S.D. Fla. 2001) (Gold, J.) (alterations added)). Because the court usually has minimal evidence at this stage—typically only pleadings and any affidavits that have been submitted—the standard for determining similarity is fairly lenient and typically results in conditional certification of a representative class. *Hipp*, 252 F.3d at 1218; *see also Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir. 2007). If the district court conditionally certifies the collective action, putative plaintiffs are given notice and the opportunity to opt in. *Id*. The action then proceeds as a representative action throughout discovery. *Id*.

At the second stage, the employer may move to decertify the collective action, typically near the end or close of discovery. *Id. See also Morgan*, 551 F.3d at 1261. By this point, the district court has a much thicker record than it had at the notice stage and can therefore make a more informed factual determination regarding similarity. *Morgan*, 551 F.3d at 1261. Therefore, the standard for determination at the second stage is less lenient, and the plaintiff bears a heavier burden. *Id*. (citing *Anderson*, 488 F.3d at 953). The Eleventh Circuit has not clarified how much less lenient this standard is but explained that "the more material distinctions [between opt-ins] revealed by the evidence, the more likely the district court is to decertify the collective action." *Anderson*, 488 F.3d at 953.

## III.      DISCUSSION

### A.      *Whether Plaintiffs' Claims Are Barred By Performer Lease Agreements*

Initially, the undersigned addresses an argument raised by Defendants at the outset of the November 30, 2022, hearing.[3] Defendants argued that all entertainers who worked at Defendant BT's during the last three years signed Dancer Performance Lease Agreements, in which the entertainers agree not to participate in any class or collective actions against Defendant BT's.[4] Therefore, according to Defendants, the entertainers are precluded from participating in a class or collective action, and the Motion must be denied. As the undersigned pointed out at the hearing, there is no evidence in the record, and Defendants did not offer any at the hearing, supporting counsels' claim that *every* entertainer during the last three years entered into such agreements. Accordingly, the undersigned recommends that the defense be rejected.

---

[3] At the hearing, the parties also raised the issue that the deadline for fact discovery would have to be extended because no class-wide discovery has taken place and the current discovery deadline of December 20, 2022, was then approaching. The undersigned notes that the fact discovery deadline has since expired.

[4] A copy of the Agreement is attached to Defendants' Motion to Compel Arbitration and Stay Proceedings as to Plaintiff Alon Roberts [ECF No. 6-1]. The particular language is found at paragraph 14 of the Agreement. *Id.* at ¶ 14 (ENTERTAINER AGREES THAT ALL CLAIMS BY HER AGAINST THE CLUB (AND ANY OTHER PERSONS OR ENTITIES ASSOCIATED WITH THE CLUBS) SHALL BE BROUGHT AND MAINTAINED BY HER INDIVIDUALLY; THAT SHE WILL NOT CONSOLIDATE HER CLAIMS WITH THOSE OF ANY OTHER INDIVIDUAL; THAT SHE WILL NOT SEEK CLASS OR COLLECTIVE ACTION TREATMENT FOR ANY CLAIM THAT SHE MAY HAVE; AND THAT SHE WILL NOT PARTICIPATE IN ANY CLASS OR COLLECTIVE ACTION AGAINST THE CLUB OR AGAINST ANY PERSONS OR ENTITIES ASSOCIATED WITH IT. IF AT ANY TIME ENTERTAINER IS MADE A MEMBER OF A CLASS IN ANY PRECEEDING BARRED BY THESE PROVISIONS, SHE WILL "OPT OUT" AT THE FIRST OPPORTUNITY.).

**B.**     *Whether Similarly Situated Putative Plaintiffs Desire To Opt In*

The first issue presented as to conditional certification is whether Plaintiffs have demonstrated a reasonable basis for their claim that other putative plaintiffs who are similarly situated desire to opt in. In the Motion, Plaintiffs assert that the putative plaintiffs are all entertainers who worked at Defendant BT's during the preceding three years. Mot. at 3. In Plaintiffs' declarations, submitted in support of the Motion, Plaintiffs state they are entertainers currently/formerly employed by BT's on the River and that the primary job duty of all entertainers employed by BT's is the same—to dance or entertain BT's customers. *See e.g.*, Williams Decl. at ¶¶ 2, 4; Roberts Decl. at ¶¶ 2, 4; Bush Decl. at ¶¶ 2, 4.  Plaintiffs also state that BT's treats all entertainers as independent contractors rather than as employees and subjects all entertainers to the same compensation scheme (paid by customers' tips only) and work policies. *See e.g.*, Williams Decl. at ¶¶ 5-8, Roberts Decl. at ¶¶ 5-8, Bush Decl. at ¶¶ 5-8. Lastly, Plaintiffs all state they have spoken with other entertainers who have indicated interest in joining the lawsuit.  *See* Williams Decl. at ¶ 12 (fifteen other entertainers expressed interest), Roberts Decl. ¶ 12 (five entertainers), Mbaye Decl. at ¶ 12 (twenty-five entertainers), Bush Decl. at ¶ 12 (fifteen entertainers).

In Response, Defendants do not counter Plaintiffs' arguments regarding whether Plaintiffs and the putative plaintiffs are similarly situated. Instead, they argue that Plaintiffs' declarations are insufficient to establish that other individuals desire to opt in to the litigation. Resp. at 4. ("Plaintiffs have submitted declarations indicating that 'I believe there are other entertainers who would join this lawsuit.' . . .  Such conclusory allegations are insufficient to establish that other individuals actually desire to opt into the litigation.").

As Plaintiffs point out in the Reply, Defendants misquote Plaintiffs' declarations by omitting the next sentence in those declarations in which each Plaintiff states, under oath, that they have spoken to other entertainers at BT's who indicated they would join this lawsuit if this Court issued notice. *See e.g.*, Williams Decl. at ¶ 12.

Based on a reading of the full declarations, the undersigned finds that Plaintiffs' statements in the declarations are not conclusory. *See Reyes v. Carnival Corp.*, No. 04-21861-CIV, 2005 WL 4891058, at *6 (S.D. Fla. May 25, 2005) (Gold, J.) (finding that affidavits regarding interest of other employees to opt in that are based upon declarants' personal knowledge, observation, and experience are not conclusory). The undersigned also finds that Plaintiffs' declarations are corroborated by the fact that thirteen entertainers have already opted in to join the five plaintiffs who first brought this action. [ECF Nos. 25,   82, 85, 89]. It is also worth noting that Defendants indirectly corroborated Plaintiffs' statements with evidence submitted in support of a prior motion, [ECF No. 24-1], indicating that twelve other entertainers previously joined a similar action against BT's on the River. *Id.* (Referring to *Aquino v. BT's On The River, LLC*, No. 1:20-CV-20090-RNS (S.D. Fla. July 21, 2020)).

Courts in this District have found similar evidence sufficient to satisfy plaintiffs' burden at this "lenient" notice stage. *See Espinoza v. Galardi S. Enterprises, Inc.*, No. 14-21244-CIV, 2014 WL 5410307, at *4 (S.D. Fla. Oct. 23, 2014) (Goodman, J.) (finding that plaintiff met her burden where three employees consented to join action prior to class certification and several other employees initiated a separate action); *Guerra v. Big Johnson Concrete Pumping, Inc.*, No. 05-14237-CIV, 2006 WL 2290512, at *4 (S.D. Fla. May 17, 2006) (Lynch, J.) (finding that affidavit indicating that at least one other coworker desired to join suit raised plaintiff's contention of opt-in interest beyond one of pure speculation); *Wynder v. Applied Card*

*Sys., Inc.*, No. 09-80004-CIV, 2009 WL 3255585, at *3 (S.D. Fla. Oct. 7, 2009) (Marra, J.) (finding that statements in affidavits from plaintiff and one other employee were sufficient to satisfy the notice stage analysis).

Likewise, the undersigned finds that Plaintiffs' declarations and other evidence discussed above are sufficient to establish a reasonable basis for Plaintiffs' claims that other similarly situated employees would opt in to the collective action if provided notice.

**C.      *Contents Of And Procedures For The Proposed Notice***

Having determined that Plaintiffs have satisfied their burden of demonstrating that other similarly situated putative plaintiffs would opt in if given notice, the undersigned next addresses the procedures for giving notice and the content and form of the notice to be given. In the Response, Defendants raise numerous arguments regarding the notice process, including: what putative plaintiff contact information they must provide and when, how long the opt-in period should be, the permissible methods for giving notice, the contents of the proposed notice, and whether notice should be given to entertainers who signed arbitration agreements. *See generally*, Defs. Resp. [ECF No. 45].

The undersigned addresses each of these issues below.

**1.   *Production Of Putative Plaintiff Contact Information***

In the Motion, Plaintiffs request that the Court order Defendants to provide a list of all potential plaintiffs and their contact information within fourteen days. Specifically, Plaintiffs request that Defendants provide the following information for each entertainer who has worked at BT's in the past three years: (1) full name, (2) dance name, (3) last-known address, (4) cell phone number, (5) last-known email address, (6) dates of employment, and (7) last four digits of their Social Security number. Mot. at 16.

Defendants argue that the requested 14-day time period for production of information is unrealistic and burdensome. Resp. at 5. In lieu of fourteen days, Defendants suggest a 30-day period to produce contact information. *Id.* Plaintiffs do not object to extending the time period to 30 days for Defendants to provide entertainer contact information, so this issue is moot. *See* Reply at 4.

Defendants also argue that they should not be required to provide the last four digits of entertainers' Social Security numbers on grounds that it would breach those individuals' expectations of privacy. Resp. at 7 (citing *Gibbs v. MLK Express Servs., LLC*, No. 218CV434FTM38MRM, 2019 WL 1980123, at *18 (M.D. Fla. Mar. 28, 2019), *report and recommendation adopted in part, rejected in part*, No. 218CV434FTM38MRM, 2019 WL 2635746 (M.D. Fla. June 27, 2019) (finding no legitimate basis for disclosure of putative plaintiffs' phone numbers or social security numbers).

At the hearing, Plaintiffs agreed to withdraw their request for entertainers' Social Security numbers. Therefore, this issue is also moot. The Court notes that defense counsel represented, at the hearing, that Defendants have very limited information regarding entertainers and former entertainers. The undersigned admonished Defendants that they must conduct a thorough search for information using all reasonable available means.

Accordingly, the undersigned recommends that the Court order that within 30 days of the Court's Order, Defendants shall provide to Plaintiffs the full name, dance name, last-known address, cell phone number, last-known email address, and dates of employment of all entertainers who worked for Defendant BT's during the last three years and that Defendants conduct a thorough search for the information using all reasonable available means.

### 2. The 60-Day Opt-In Period

Defendants object to Plaintiffs' request for a 60-day period for putative plaintiffs to opt in, arguing that the 60-day opt-in period is excessive and unjustified. Resp. at 5. In support, Defendants rely on two cases in this District in which courts authorized opt-in periods of less than sixty days. *Rojas*, 297 F.R.D. at 680 (authorizing 45-day opt-in period) and *Bell v. Mynt Ent., LLC*, 223 F.R.D. 680, 683 (S.D. Fla. 2004) (Jordan, J.) (authorizing 39-day opt-in period from date of entry of order granting conditional certification). The undersigned notes that neither case relied on by Defendants indicates whether the plaintiffs requested longer opt-in periods.

Plaintiffs reply that a 60-day opt-in period affords them sufficient time to send notice, receive any returned or undelivered mail, and resend notices, as they expect the mailing addresses of a significant number of putative plaintiffs to be outdated because they are "young, itinerant, and frequently change addresses." Reply. at 5 (citing Mbaye Decl. at ¶ 13 (stating that the entertainers at BT's frequently change addresses)). Defendants also indicate that the putative plaintiffs are "transient and almost-temporary individuals." Resp. at 5. Plaintiffs also contend that 60 and 90-day opt-in periods are routinely approved in FLSA cases in this District. *See, e.g., Wright v. Waste Pro USA, Inc.*, No. 0:19-CV-62051-KMM, 2020 WL 8641581, at *7 (S.D. Fla. Dec. 22, 2020) (Moore, J.) (denying defendants' request for a 45-day notice period and approving plaintiff's request for a 60-day period); *Harapeti v. CBS Television Stations, Inc.*, No. 20-CV-20961, 2020 WL 8083695, at *7 (S.D. Fla. Dec. 21, 2020) (Louis, J.), *report and recommendation adopted*, No. 20-20961-CIV, 2021 WL 86908 (S.D. Fla. Jan. 11, 2021) (finding 60-day notice period to be reasonable); *Negron v. Red Crab FL LLC*, No. 22-14179-CIV, 2022 WL 4547935, at *5 (S.D. Fla. Sept. 29, 2022) (Maynard, J.) (same); *Wajcman v.*

*Hartman & Tyner, Inc.*, No. 07-61472-CIV, 2008 WL 203579, at *2 (S.D. Fla. Jan. 23, 2008) (Cohn, J.) (same).

The undersigned finds the requested 60-day opt-in period is reasonable and appropriate, especially given the undisputed fact that the putative plaintiffs will be difficult to track down.

### 3. *Methods of Giving Notice*

Plaintiffs request that the Court authorize them to give notice to putative plaintiffs by (i) mail, (ii) email, (iii) text message, and (iv) the posting of information at the workplace. Mot. at 15. They also request that the proposed Consent to Join form be issued with the notice by (i) mail and (ii) email and that they be permitted to create a website that allows potential opt-in plaintiffs to submit their Consent to Join forms electronically to Plaintiffs' counsel. *Id.* In addition, Plaintiffs request authorization to send a reminder notice to putative opt-in plaintiffs half-way through the opt-in period by mail, e-mail and text. *Id.* at 15.

Defendants oppose the use of email, text message, posters, and websites to provide notice.

#### a) **Sending Notice Via Email**

Defendants argue that emailing notices to putative plaintiffs is unnecessary and that the use of electronic notices presents risks that they may be altered, forwarded, or otherwise abused. Resp. at 6. The cases relied on by Defendants in support of these concerns, however, are not persuasive. In *Lara v. G & E Fla. Contractors, LLC*, Judge O'Sullivan authorized notice by mail but not email solely because plaintiffs did not respond to Defendants' objection to notice being sent by email. No. 15-20306-CIV, 2015 WL 4760678, at *8 (S.D. Fla. July 21, 2015) (O'Sullivan, J.), *report and recommendation adopted*, No. 15-20306-CIV, 2015 WL

4768328 (S.D. Fla. Aug. 11, 2015). In *Gordon v. Kaleida Health*, the court did address the issues with emailing notice to putative opt-in plaintiffs and denied the plaintiffs' request to do so due to concerns that emails could be modified or misleading when forwarded with additional commentary. No. 08-CV-378S, 2009 WL 3334784, at *11 (W.D.N.Y. Oct. 14, 2009). Although the *Gordon* decision supports Defendants' position, it is telling that the only case Defendants located in support of concerns with providing notice by email is a 2009 opinion from the Western District of New York. It is safe to say that we have come a long way since 2009 with the use of email for legal notice, and, as such, the 2009 decision lacks persuasive value.

A review of other collective action cases in the Eleventh Circuit reflects that courts generally do authorize notice via email when requested. *See Alequin v. Darden Restaurants, Inc.*, No. 12 Civ. 61742, 2013 U.S. Dist. LEXIS 108341, at *2 (S.D. Fla. July 31, 2013) (Rosenbaum, J.) (permitting notice via email and noting that courts in the Eleventh Circuit commonly do the same); *Gibbs*, No. 18-CV-434FTM38MRM, 2019 WL 1980123, at *17 (permitting email notice and citing other opinions in the Middle and Southern Districts that permitted same).

The benefits of a collective action "depend on employees receiving accurate and timely notice . . . so that they can make informed decisions about whether to participate." *Hoffmann–La Roche, Inc.*, 493 U.S. at 170. Email is an inexpensive and efficient means of providing notice of an action to potential members of a collective action. *See Palma v. MetroPCS Wireless, Inc.*, No. 8:13-CV-698, 2013 WL 6597079, at *3 (M.D. Fla. Jan. 22, 2014). Moreover, the risk that the notice may be rendered misleading due to commentary from third parties forwarding emails is relatively insignificant given that the notice itself would be attached. On balance, the

13

undersigned finds that any risks attendant to sending notices by email are outweighed by the benefits. Therefore, the undersigned finds that Plaintiffs should be permitted to send notice by email.

b) **Sending Notice Via Text Message**

Defendants also argue that sending notice via text message without the recipients' consent would be inappropriate and "could well be viewed by the recipient as harassing in nature." Resp. at 6 (citing *Anderson v. Minacs Grp. (USA) Inc.*, No. 16-13942, 2017 WL 1856276, at *9 (E.D. Mich. May 9, 2017) (finding that supplying the telephone numbers of current and former employees to enable notice by text message is "an unnecessary intrusion upon the privacy of these individuals")); s*ee also Miller v. JAH, LLC*, No. 5:16-CV-01543-AKK, 2018 WL 305819, at *3 (N.D. Ala. Jan. 5, 2018) (rejecting text message notice, because "some individuals have limited phone plans, and unwarranted text messages may cause these individuals to incur monetary charges[,]" and "sending potential class members text messages will subject them to the annoyance of unsolicited messages that Congress passed the Telephone Consumer Protection Act, in part, to address").

In reply, Plaintiffs argue that sending notices via text message is routinely authorized by courts in the Southern District. However, in support, Plaintiffs only cite one case in which the court authorized notice through text message, and, in that case, the motion for collective certification was unopposed. *See Aguiar v. M.J. Peter & Assocs.*, No. 20 Civ. 60198, 2020 U.S. Dist. LEXIS 253390, at *7 (S.D. Fla. Sept. 10, 2020) (Ruiz, J.) (granting unopposed motion for certification and authorizing notice via text message in similar suit against gentlemen's club). Defendants point out that courts routinely deny requests to send any sort of notice through text message where the plaintiff has not demonstrated a need to transmit the notice

via text in addition to first class mail and email. *Wright*, No. 0:19-cv-62051-KMM, 2020 U.S. Dist. LEXIS 250713, at \*20; *Gibbs*, No. 218CV434FTM38MRM, 2019 WL 1980123, at \*17.

The undersigned agrees that the use of unsolicited text messages is not warranted. Unsolicited text messages have become a growing annoyance to society, so much so that Congress passed the Telephone Consumer Protection Act, in part, to curb the practice. *Miller*, No. 5:16-CV-01543-AKK, 2018 WL 305819, at \*3. Plaintiffs have not demonstrated a need to send notice via text message in addition to mail, email and workplace posting sufficient to warrant the use of text messages in this case.

Accordingly, the undersigned finds that Plaintiffs' request to send notice via text message should be denied. Notwithstanding, Plaintiff's counsel should not be prohibited from providing information via text message to any putative opt-in plaintiffs who request and consent to receive further information via text message.

### c)  **Posting Notice At The Workplace**

Defendants argue that posting the notice at the workplace would be punitive and should not be permitted here where there is no claim Defendants have failed to cooperate with the collective action process. *See Lara*, No. 15-20306-CIV, 2015 WL 4760678, at \*8 ("The plaintiffs' request that the notice be posted at some of the defendants' job sites should be denied without prejudice to renew upon a showing of uncooperativeness by the defendants."). In reply, Plaintiffs assert that workplace posting is routinely approved by courts in this District. Reply at 6.

Although some courts have held that posting notice at the defendant's workplace is only warranted when the defendant refuses to cooperate with the collective action process, other courts have allowed workplace posting notwithstanding the defendant's stated intention

to cooperate. *See Rosell v. VMSB, LLC*, No. 20-20857-CIV, 2020 WL 7767879, at *5 (S.D. Fla. July 7, 2020) (Torres, J.); *see also Didoni v. Columbus Rest.*, LLC, 327 F.R.D. 475, 482 (S.D. Fla. 2018) (Altonaga, J.) (finding request to post at workplace to be reasonable); *Martinez v. DHL Express (USA) Inc.*, No. 15-22505-CIV, 2016 U.S. Dist. LEXIS 14304, at *28 (S.D. Fla. Feb. 5, 2016) (Altonaga, J.) (authorizing workplace posting); *Wright*, No. 0:19-cv-62051-KMM, 2020 U.S. Dist. LEXIS 250713, at *20 (same); *Collado v. J. & G. Transp., Inc.*, No. 14-80467-CIV-GOODMAN, 2014 U.S. Dist. LEXIS 152441, at *16 (S.D. Fla. Oct. 23, 2014) (Goodman, J.) (same). *But see Lara*, No. 15-20306-CIV, 2015 WL 4760678, at *8 (denying request to post at worksite without prejudice to renew upon a showing of uncooperativeness by the defendants); *Gibbs*, No. 218CV434FTM38MRM, 2019 WL 1980123, at *18 (explaining that the Middle District of Florida has approved that practice only after a showing that a defendant has failed to cooperate with the notice process).

Defendants have not elaborated on how the posting of the notice at the workplace would be punitive. As set forth above, the purposes of a collective action are "(1) reducing the burden on plaintiffs through the pooling of resources, and (2) efficiently resolving common issues of law and fact that arise from the same illegal conduct." *Hoffman-La Roche, Inc.*, 492 U.S. at 170. The undersigned finds that these purposes would be better served by the posting of the notice at the workplace under the circumstances presented in this case, including, in particular, the difficulties in locating current contact information for the putative plaintiffs. Moreover, federal regulations require employers to post notices in conspicuous places in workplaces that notify employees of their rights under the FLSA, and the posting of the notice of the collective action—which similarly notifies BT's employees of their rights under the

16

FLSA in relation to the instant matter—is no more burdensome on Defendants. *See Rojas*, 297 F.R.D. at 682.

Accordingly, the undersigned finds that Plaintiffs' request for workplace posting is appropriate in this case and should be permitted.

### d) **Sending A Reminder Notice Halfway Through The Opt-In Period**

In the Motion, Plaintiffs also requested permission to send a reminder notice to putative plaintiffs half-way through the opt-in period to remind them of the upcoming deadline to join the action. Mot. at 15. Defendants opposed this request. At the November 30, 2022, hearing, Plaintiffs agreed to withdraw their request to send a reminder. Therefore, this issue is moot.

### e) **Posting Notice Online**

Plaintiffs also request permission to create a website to post the notice online for putative opt-in plaintiffs so they may submit their Consent to Join forms electronically. Mot. at 14. At the November 30, 2022, hearing, Plaintiffs expressed that they intended to also upload the Complaint, Answer, and other court documents onto the website.

At the hearing, Defendants argued that Plaintiffs are attempting to use the Court to engage in solicitation and expressed concern regarding the extent of information Plaintiff intended to put online.

The undersigned agrees that Plaintiffs should not be permitted to have unrestrained control of what they post online in conjunction with the notice. Therefore, the undersigned finds that Plaintiffs' use of a website should be limited to posting the notice and Consent to Join form online in an accessible fill-in format. Plaintiffs may also provide a link or QR code

to the online documents on the notice form in the same manner as in the attached proposed notice.[5]

#### 4. *Contents Of The Proposed Notice*

The next issues raised by Defendants address the contents of the notice to be given to putative Plaintiffs. Plaintiffs submitted a proposed notice as an exhibit to the Motion. [ECF No. 37-6]. Defendants raised several issues with the form and contents of Plaintiffs' proposed notice: (1) it does not contain defense counsel's contact information, (2) it does not indicate that opt-in plaintiffs may be liable for Defendants' fees and costs, (3) it states that opt-in plaintiffs agree to be represented by Plaintiffs' counsel, (4) it characterizes the action as a class action, and (5) it contains portions that are in bold. Resp. at 9-12. By the time of the hearing, the parties resolved most of these issues.

At the hearing, the parties indicated that the only remaining unresolved issues regarding the contents of the notice were whether defense counsel's information should be included in the notice and whether the notice should include language regarding the risk that the Court may order Plaintiffs to pay Defendants' fees and costs if Plaintiffs lose the case. Plaintiffs submitted an updated notice to the Court in which they removed all bold lettering and exchanged references to class action to collective action. The undersigned addresses the remaining disputed issues as reflected in the updated notice, which is attached to this Report.

---

[5] The undersigned is not expressing any view on how Plaintiffs' counsel may operate their own websites for Plaintiffs who have opted in and agreed to representation by Plaintiffs' counsel. But the use of a website for purposes of notice to putative plaintiffs should be limited as set forth above.

### i) <u>Inclusion Of Defense Counsel's Contact Information</u>

Defendants argue that the notice should contain defense counsel's information in the interest of providing complete information and preventing disinformation to potential opt-in plaintiffs. Resp. at 9; *see also Garcia v. J&J, Inc.*, No. 19-cv-60728-BLOOM/Valle, 2019 U.S. Dist. LEXIS 127200, at *13 (S.D. Fla. July 30, 2019) (Bloom, J.) ("in the interest of providing complete information to potential opt-in plaintiffs the Notice should contain the contact information for both Plaintiffs' counsel and Defendants' counsel while clearly identifying who represents each side to avoid any confusion.").

Plaintiffs oppose the inclusion of defense counsel's contact information on grounds it would be inappropriate given that the interests of Defendants and their counsel and the putative plaintiffs are inherently in conflict. Reply at 9. Plaintiffs also point to an Eleventh Circuit holding, in the Rules 23 context, that "defense counsel ha[s] a duty to refrain from discussing the litigation with members of the class as of the date of class certification." *See Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1207 (11th Cir. 1985).

In *Rosell v. VMSB, LLC*, Judge Torres denied the defendant's request to include its attorney's information in an FLSA notice because of the potential "chilling effect of future participation by either confusing possible opt-in plaintiffs or by inadvertently intimidating them from participating." No. 20-20857-CIV, 2020 WL 7767879, at *4. The undersigned agrees and finds that the inclusion of defense counsel's contact information in the notice is not warranted in this case.

### ii) <u>Informing Potential Opt-Ins They Could Be Liable To Defendants For Fees And Costs</u>

Defendants object to Plaintiffs' proposed notice on grounds it fails to inform potential plaintiffs that they could be liable to Defendants for attorneys' fees and costs should

Defendants prevail. Resp. at 9. Defendants cite three cases from this District in which the courts required that the notice sent to potential opt-ins include this information. *See Garcia*, No. 19-cv-60728-BLOOM/Valle, 2019 U.S. Dist. LEXIS 127200, at *14 ("In the interest of providing an accurate and informative notice to potential opt-in plaintiffs, the Court finds it necessary to inform them of the potential liability for costs and attorney's fees should they not prevail in this action"); *Tauriz v. Sec. Mgmt. Innovations*, No. 12-23140-CIV-UNGARO, 2013 U.S. Dist. LEXIS 193220, at *8 (S.D. Fla. Jan. 23, 2013) (Ungaro, J.) ("[T]he proposed Notice is incomplete and lacks adequate specificity as to the nature of the claim and the consequences of joining the present action."); *Sealy v. Keiser Sch., Inc*, No. 11-61426-CIV, 2011 U.S. Dist. LEXIS 152369, at *13 (S.D. Fla. Nov. 8, 2011) (Dimitrouleas, J.) ("the proposed notice fails to fully advise potential class members of the consequences of opting in to the lawsuit, including that Defendant may attempt to recover its costs from the potential class members if the lawsuit is unsuccessful"). Plaintiffs argue that the requested language only serves to discourage participation, relying on two decisions from the District of Kansas and the Eastern District of Missouri.

It is true that the FLSA is not a two-way fee-shifting statute (*see Bell*, 223 F.R.D. at 683), and Plaintiffs will only be liable for attorneys' fees if they are found to have "acted in bad faith, vexatiously, wantonly or for oppressive reasons." *See Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1543 (11th Cir. 1985). In other words, the risk that Plaintiffs would be charged with payment of Defendants' attorneys' fees is relatively low. Plaintiffs also argue that Defendants' proposed language is inaccurate because Plaintiffs' fee agreement does not pass Defendants' hypothetical costs to their clients. Reply at 9.

Although Plaintiffs will only be liable for attorneys' fees if they have acted in bad faith, the undersigned finds that notice of such potential risks is appropriate. *See, e.g., Garcia*, No. 19-cv-60728-BLOOM/Valle, 2019 U.S. Dist. LEXIS 127200, at *14. Moreover, although Plaintiffs' fee agreement with their attorneys does not pass costs to Plaintiffs, it is not a forgone conclusion that all opt-in plaintiffs will choose the same attorneys to represent them.

At the hearing, the undersigned found that the notice should include language regarding Plaintiffs' potential liability for fees and costs for the foregoing reasons and asked the parties to confer and propose a new notice in accordance with the discussions held on the record. On December 16, 2022, the parties submitted a new proposed notice to Chambers. However, Defendants object to the language proposed by Plaintiffs regarding Plaintiffs' potential liability for fees and costs. The undersigned has reviewed the new proposed notice and finds that the following one modification to numbered paragraph 3 accurately reflects the undersigned's findings at the hearing: "If Defendants prevail in this action, they may seek, and, in some limited circumstances, may be entitled to recover their costs and fees."

Accordingly, the undersigned recommends Plaintiffs' proposed notice be approved with the one modification to numbered paragraph 3 set forth above.

### 5. *Giving Notice To Employees With Arbitration Agreements*

Defendants argue that notice should not be sent to putative plaintiffs who agreed to arbitration because such individuals would be ineligible to join this action. Resp. at 11. Defendants further assert that they should be afforded the opportunity to show that many of the putative plaintiffs entered into arbitration agreements. *Id.* Plaintiffs respond that the question of whether putative plaintiffs are subject to arbitration agreements is a merits-based question that should not be addressed as part of the similarly situated analysis. Reply at 7.

The undersigned finds that the question of whether putative plaintiffs are subject to arbitration agreements is a matter that should be addressed separate and apart from the determination of whether Plaintiffs have satisfied their burden at the notice stage. *See Sealy*, No. 11-61426-CIV, 2011 WL 7641238, at *3 (refusing to consider at the notice stage whether plaintiffs signed arbitration agreements); *Campbell v. Pincher's Beach Bar Grill, Inc.*, No. 2:15-CV-695-FtM-99MRM, 2016 WL 3626219, at *6 (M.D. Fla. July 7, 2016) (issues surrounding arbitration are normally addressed at the decertification stage or after a motion to compel arbitration). Defendants may separately identify those Plaintiffs who have signed such agreements and seek determination of whether they should be compelled to arbitration.[6]

Therefore, the undersigned finds that Defendants' request to exclude entertainers who signed arbitration agreements from receiving notice of the collective action should be denied.

## IV.  RECOMMENDATION

Based on the foregoing, the undersigned respectfully recommends that Plaintiffs' Motion for FLSA Conditional Certification and Issuance of Court-Authorized Notice [ECF No. 37] be **GRANTED IN PART AND DENIED IN PART** as follows:

1) Plaintiffs are authorized to send notice to putative plaintiffs as set forth herein;

2) Within 30 days of the Court's Order, Defendants shall provide to Plaintiffs the full name, dance name, last-known address, cell phone number, last-known email address, and dates of employment of all entertainers who worked for Defendant BT's during the last three years;

---

[6] It also appears that the process of identifying all putative plaintiffs who have signed agreements before notice can be sent is impracticable and would unnecessarily delay the notice process.

3) Plaintiffs may provide notice by mail, email, posting at the workplace, and online as set forth herein but not by text message;

4) Plaintiffs may use the proposed notice attached hereto with the one modification to numbered paragraph 3 regarding Plaintiffs' potential liability for Defendants' attorneys' fees as follows: "If Defendants prevail in this action, they may seek, and, in some limited circumstances, may be entitled to recover, their costs and fees."; and

5) Putative plaintiffs shall have 60 days from the date notice is sent to opt in to the collective action.

The parties will have fourteen (14) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Robert N. Scola, United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY SUBMITTED** in Chambers at Miami Florida, this 31st day of January, 2023.

_____
MELISSA DAMIAN
UNITED STATES MAGISTRATE JUDGE

cc:    Hon. Robert N. Scola
       Counsel of Record